UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  TAM Q. VU, | : | Case No. 14-13852REF |
| Debtor | : | Chapter 7 |

---------------------------------------------------------

| | | |
|---|---|---|
| TAM Q. VU, | : | Adv. No. 15-61 |
| Plaintiff | : | |
| v. | : | |
| YOUNG [sic] LIN, | : | |
| Defendant | : | |

# MEMORANDUM OPINION

# I.  INTRODUCTION

Defendant's conduct in barring Plaintiff from entering Plaintiff's restaurant constituted a willful violation of the automatic stay that caused Plaintiff to suffer actual damages to his property ($7,250) and emotional distress ($2,000), which combined is $9,250. I will also impose on Defendant, as part of Plaintiff's actual damages, a close approximation of Plaintiff's attorney's fees in the amount of $3,500. Defendant's conduct in violating the stay was patently egregious and outrageous, thereby requiring the imposition of punitive damages in the amount of $5,000. The award of punitive damages is intended to punish Defendant and will deter him (hopefully) from such blatant transgressions of the automatic stay in the future. The total amount owed to Plaintiff from Defendant therefore is $17,750 and I will enter judgment in favor of Plaintiff and against Defendant in that amount.

1

On February 18, 2015, Plaintiff/Debtor, Tam Q. Vu ("Plaintiff"), initiated this adversary proceeding against Defendant/Landlord, Yung Lin ("Defendant"), seeking damages under 11 U.S.C. §362(k)(1) for violating the automatic stay. I held the trial on April 27, 2018, and directed the parties to file post-hearing briefs, which they did.[1] This matter is now ripe for decision.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Sometime in January 2013, Plaintiff purchased the assets of a restaurant business operating at 1930 Columbia Ave., Lancaster, PA (the "Premises"), from Kar Thiem Lee ("Mr. Lee") for $73,000. On January 15, 2013, as part of the acquisition of the restaurant, Plaintiff entered into an Assignment and Assumption of Lease with DFY Realty Management, Inc. ("DFY"), the owner of the Premises. Defendant is the President of DFY.

Beginning almost immediately, in April 2013, Plaintiff had difficulty making timely lease payments to DFY. In February 2014, DFY filed a state court eviction action against Plaintiff. The state court entered a judgment of eviction against Plaintiff and in favor of DFY on April 24, 2014. The Sheriff scheduled

---

[1]     A new issue arose for the first time in Plaintiff's initial post-trial brief and led me to request supplemental briefs, which were also duly filed.

eviction of Plaintiff from the Premises on May 13, 2014, but Plaintiff stayed the eviction when he filed his bankruptcy petition on that date. Defendant received notice of Plaintiff's bankruptcy filing the next day, May 14, 2014.

After Plaintiff filed his bankruptcy petition, he paid rent to DFY for approximately two months. Thereafter, his payment on the lease became sporadic. Sometime in January 2015, upon the poor health of both Plaintiff and his wife, Plaintiff decided to surrender the Premises to Defendant effective on January 31, 2015. On or about January 28, 2015,[2] Defendant entered the Premises (which Plaintiff had not yet surrendered) and changed the locks. As a result, Plaintiff was unable to enter the Premises to retrieve his personal property.[3]

On January 29, 2015, counsel for Plaintiff sent counsel for Defendant a letter advising her that Defendant had violated the automatic stay by locking Plaintiff out of the Premises. The letter stated that Plaintiff desired to remove his personal property from the Premises and have an auctioneer catalogue the property for sale. Plaintiff's counsel requested that Defendant's counsel contact her for Plaintiff to arrange for speedy liquidation of the personal property. As Defendant

---

[2]      Plaintiff says that Defendant locked him out of the Premises on January 26, 2015; but Defendant says the lockout occurred on January 28, 2015. This discrepancy is unimportant - whether the lockout occurred on January 26 or January 28, 2015, is of no consequence to my decision.

[3]      Plaintiff testified that he went to the Premises on the day of the lockout and saw Defendant and several other people inside the Premises. He knocked on the door, but Defendant and the others in the Premises ignored him. He further testified that after the lockout, No Trespassing signs appeared on the Premises and within several weeks, a new restaurant began operating in the Premises.

had done previously, counsel for Defendant acted with insouciance, ignoring the letter, and she did not reply. Plaintiff was provided no opportunity to enter the Premises to catalogue or retrieve his personal property. As a result, Plaintiff filed the complaint now before me seeking actual damages (including attorneys' fees) and punitive damages against Defendant under 11 U.S.C. §362(k)(1) for violating the automatic stay.

# III. DISCUSSION

## A. Plaintiff incorrectly claimed that the Trustee had abandoned the restaurant assets and other property from the estate before Defendant's actions.

Plaintiff alleged in his brief for the first time that the Chapter 7 Trustee had abandoned all assets to Plaintiff on January 7, 2015.[4] This abandonment was said to have occurred a couple weeks before Defendant allegedly violated the automatic stay.

Plaintiff appeared to rely on (but did not definitively plead) Section 362(a)(3) of the Bankruptcy Code as the basis for the alleged stay violation. If

---

[4]    Plaintiff's brief filed May 17, 2018, at p. 3.

Plaintiff were correct in alleging that the assets had been abandoned from the estate

on January 7, 2015, however, no violation of the stay could have occurred. The

stay of Section 362(a)(3) applies to, and protects against, acts to obtain possession

of, or exercise control over, property of the estate. 11 U.S.C. §362(a)(3). It neither

applies to, nor protects against, acts to obtain possession of, or control over,

property abandoned from the estate which would thereafter revert back to a debtor.

See Fields v. Bleiman, 267 Fed. Appx. 144, 146 (3d Cir. 2008); 11 U.S.C.

§362(c)(1).

On June 20, 2018, I ordered the parties to file supplemental briefs to

address the abandonment issue. I also asked Plaintiff to identify the subsection of

Section 362(a) on which he relies for his claim of a stay violation. All briefs have

been filed and the abandonment issue is ready for disposition.

Plaintiff's supplemental brief now clearly identifies Section 362(a)(3)

as the basis for his demands.[5] Plaintiff also retracts the statement in his first brief

charging that the Chapter 7 Trustee had abandoned all assets to Plaintiff on January

7, 2015. To the contrary, the Trustee filed a "no asset" report on January 7, 2015,

but did not abandon the property from the estate on that day.[6] Plaintiff now alleges

that under Section 544(c) of the Bankruptcy Code, 11 U.S.C. §544(c), such

---

[5]    Plaintiff's supplemental brief filed on July 1, 2018 at pp. 1-2.
[6]    Plaintiff's supplemental brief at p. 3.

property was deemed to have been abandoned to Plaintiff upon the closing of the

main bankruptcy case. Because Plaintiff now acknowledges that the property in

issue had not been abandoned by the Trustee, Plaintiff's Section 362(a)(3) action

remains viable.

Plaintiff's supplemental brief, however, states that Defendant was

wrong in taking control over the property because Plaintiff had exempted it in his

Schedule C.[7] Plaintiff's second red herring appears at first glance to present

another self-defeating obstacle to Plaintiff's recovery under Section 362(a)(3).

Property claimed by a debtor as exempt becomes exempt and is no longer property

of the bankruptcy estate unless, 30 days after the creditors' meeting, the trustee or

another party in interest files an objection to a debtor's claimed exemptions. Taylor

v. Freeland & Kronz, 938 F.2d 420, 423 (3d Cir. 1991), aff'd 503 U.S.638 (1992);

In re Mollo, 196 Fed. Appx. 102, 104 (3d Cir. 2006) citing Taylor.

The deadline for objections to Plaintiff's exemptions was February 6,

2015, 30 days after the January 7 creditors' meeting. Neither the Chapter 7 Trustee

nor any other party objected to Plaintiff's claim of exemptions. All of the property

that Plaintiff had claimed as exempt therefore finally became exempt and was no

longer property of the estate on February 7, 2015. Before that date, however, the

---

[7]     Plaintiff's supplemental brief, at p. 2.

property claimed as exempt remained property of the estate. Because Defendant's

conduct occurred before February 7, 2015 in all respects, Plaintiff's request for

sanctions for Defendant's violation of the automatic stay remains viable. The

restaurant and other personal property at issue in this dispute were property of the

estate at all relevant times of Defendant's conduct.

## B. Defendant violated the automatic stay when he changed the locks to the Premises, and he further violated the stay when he failed to respond to Plaintiff's request for an opportunity to access the Premises to retrieve and catalogue his property.

The filing of a bankruptcy petition operates as an automatic stay of all

collection activities, including "any act to obtain possession of property of the

estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3). The

automatic stay is one of the fundamental protections afforded to a debtor by the

Bankruptcy Code. Univ. Med. Ctr. v. Sullivan  (In re Univ. Med. Ctr.), 973 F.3d

1065, 1074 (3d Cir. 1992); In re Traversa, 585 B.R. 215, 219 (Bankr. E.D. Pa.

2018). The scope of the automatic stay is broad and provides a debtor with a

breathing spell from his creditors. The automatic stay stops all harassment and

collection efforts and maintains the status quo between a debtor and his creditors.

Univ. Med. Ctr., 973 F.3d at 1074; Traversa, 585 B.R. at 219.

Case 15-00061-ref    Doc 43    Filed 11/07/18    Entered 11/07/18 11:26:39    Desc Main
Document    Page 8 of 22

Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1). As the Third Circuit instructed:

> It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional . . . . [A] creditor's good faith belief that he is not violating the automatic stay provision is not determinative of willfulness.

Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.), 977 F.2d 826, 829 (3d Cir. 1992); see also Lansaw v. Zokaites (In re Lansaw), 853 F.3d 657, 664 n.4 (3d Cir. 2017).

Defendant received notice of Plaintiff's bankruptcy filing on May 14, 2014. I find and conclude, therefore, that Defendant had actual knowledge of Plaintiff's bankruptcy filing from May 2014 through January 2015. He had actual knowledge when he changed the locks. And he had actual knowledge when he failed to respond to the request of Plaintiff's counsel for access to Plaintiff's property. I find and conclude, therefore, that by changing the locks and failing to respond to counsel's request for access to the restaurant Premises, Defendant acted to obtain possession of and to

exercise control over the Premises and Plaintiff's personal property, all of
which were property of the estate. When Defendant changed the locks to the
Premises and failed to respond to Plaintiff's request for access to the
personal property, he knew that Plaintiff was in bankruptcy. His conduct
therefore constituted a willful violation of the automatic stay. Lansaw, 853
F.3d at 664, n.4; Lansdale Family Rests., 977 F.2d at 829.

Defendant argues that no stay violation occurred because the
personal property that remained in the Premises when the lockout occurred
belonged to DFY, and not to Plaintiff. Attempting to prove this allegation,
Defendant attached to his May 18, 2018 brief a copy of an alleged 2006
lease between DFY and Meifang Lin ("Lin"). I reject this contention out of
hand. First, the 2006 lease was neither offered nor admitted into evidence
and is not evidence that I may consider. Second, the lease with Lin is not
relevant to this case because it is not the lease that Plaintiff assumed when
he took possession of the Premises. Plaintiff assumed a lease dated July 3,
2009 between DFY and Mr. Lee.[8] The lease between DFY and Mr. Lee does
not convey to Mr. Lee any personal property or equipment as part of the
leased Premises. I therefore find and conclude that Plaintiff acquired any and
all personal property in the leased Premises when he purchased the assets of

---

[8]      Exhibit P-1-A, admitted into evidence at trial.

9

the restaurant business from Mr. Lee. All such property belonged to Plaintiff

and not to DFY at the time of the lockout.

## C. **Plaintiff is entitled to $12,750 for actual damages from loss of his property, attorneys' fees, and emotional distress, which loss he sustained as a direct result of Defendant's willful violation of the automatic stay.**

When, as here, a debtor establishes a willful violation of the automatic

stay, Section 362(k)(1) of the Bankruptcy Code provides that the debtor may

recover actual damages, including costs and attorneys' fees, and, in appropriate

circumstances, punitive damages. 11 U.S.C. §362(k)(1).

Actual damages under Section 362(k)(1) "must be prove[n] with

reasonable certainty, and mere speculation, guess or conjecture will not suffice." In

re Nixon, 419 B.R. 281, 291 (Bankr. E.D. Pa. 2009) quoting Aiello v. Providian

Fin. Corp., 257 B.R. 245, 249 (N.D. Ill. 2000), aff'd, 239 F.3d 876 (7th Cir. 2001);

accord Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 405 (1st Cir. BAP

2004) ("actual damages should be awarded only if there is concrete evidence

supporting the award of a definite amount"); Sculky v. Internal Revenue Service

(In re Sculky), 182 B.R. 706, 708 (Bankr. E.D. Pa.1995) ("[d]amages may not be

awarded based upon speculation, guess and conjecture"). Plaintiff bears the burden

of proving all aspects of his actual damages claim. Nixon, 419 B.R. at 291; see also

Miller v. Blatstein (In re Main, Inc.), No. Civ. A. 98-5947, 1999 WL 424296, at *5

(E.D. Pa. June 23, 1999); Lord v. Carragher (In re Lord), 270 B.R. 787, 794

(Bankr. M.D. Ga.1998); see generally In re FRG, Inc., 121 B.R. 451, 458 (Bankr.

E.D. Pa.1990).

Plaintiff seeks the following amounts as actual damages he incurred as

a result of Defendant's violation of the automatic stay: (1) $21,200, which is the

value Plaintiff ascribes to the restaurant equipment and food items that remained in

the Premises when Defendant changed the locks;[9] (2) $8,500, the amount of the

security deposit Plaintiff provided to Defendant at the inception of the lease, which

was never refunded; (3) an unspecified amount as compensation for emotional

distress; and (4) an unspecified amount in attorneys' fees.

Plaintiff maintains that various items of restaurant equipment and

food items[10] remained in the Premises at the time of the lockout. No

manufacturer's names or model numbers were provided for the equipment.

Plaintiff purchased as new some of the equipment, such as an ice machine, freezer,

display, and cash register, but he did not provide the dates of these purchases or the

amounts he paid for them. All of the other restaurant equipment was purchased by

---

[9]     Exhibit P-1-C.
[10]    Exhibit P-1-C.

Plaintiff in January 2013 as part of his purchase of the restaurant business from Mr. Lee.

Defendant testified that the restaurant equipment in the Premises at the time he changed the locks was very old and worth very little, if anything. He also testified that the food remaining in the Premises was old and was not suitable for use.[11] But similar to Plaintiff, Defendant, who controlled the Premises after the lockout, failed to provide any detailed information about the nature and value of the restaurant equipment.

Plaintiff testified that an auctioneer had agreed to purchase the restaurant equipment remaining in the Premises at the time of the lockout for an amount between $13,000 and $16,000. The anticipated purchase was intended to occur on January 31, 2015, but was thwarted by Defendant's lockout. Defendant offered no agreement, bill of sale, letter, or email to establish the terms of the alleged sale. Plaintiff's testimony about the auctioneer might have been suspect, but Defendant's counsel failed to object to any part of it.[12] Plaintiff offered no other evidence regarding the age or condition of the equipment. Based on this meager evidence, I find and conclude that Plaintiff failed to meet his burden of

---

[11]     The letter that Plaintiff's counsel sent to Defendant's counsel on January 29 concedes that the food remaining in the Premises was likely unusable. Exhibit P-1-D.
[12]     The testimony about the auction and auctioneer is therefore admissible but weak.

proving that the value of these items is $21,200. Instead, I find from all of the combined evidence that their value was half of what Plaintiff claimed was the auction price - $7,250.[13] Plaintiff is therefore entitled to an award for actual damages of $7,250 to compensate him for the value of the equipment.

Defendant concedes that he has not returned the $8,500 security deposit to Plaintiff. But he maintains that DFY is owed much more than this amount in past due rent and as damages for Plaintiff's breach of the lease.[14] Plaintiff failed to address this claim at trial or in his briefs. I find and conclude that Plaintiff failed to meet his burden to establish that he is entitled to a return of any part of the security deposit from Defendant as an item of actual damages under Section 362(k)(1).

Plaintiff also requests an award of damages for the emotional distress he suffered as caused by Defendant's violation of the automatic stay. Plaintiff did not quantify the amount of damages to redress the emotional distress he suffered as a component of his actual damages claim. Instead, he relies on his testimony at trial describing his emotional state resulting from the lockout. He requests that I

---

[13]    Both Plaintiff and Defendant have many years of experience operating restaurants. I therefore afford equal weight to their testimony regarding the value of the items listed on Exhibit P-1-C. Plaintiff says the property is worth $21,200 and Defendant says the property is worthless. I believe it is somewhere in between and that $7,250 constitutes the most likely value.
[14]    Defendant testified, without contradiction, that Plaintiff owes DFY approximately $13,000 for delinquent rent and utilities.

13

use this evidence to quantify his emotional distress claim. Plaintiff's testimony

consisted of the following: At the time of the lockout, Plaintiff and his wife were in

poor health and had sole custody of four grandchildren, for whom they were

receiving no child support. Plaintiff and his family were living solely on social

security income at the time of the lockout and he was a month behind on the

mortgage payment for his home. In addition, as a result of the lockout, Plaintiff lost

all of his financial records and was forced to recreate them to prepare and file his

tax returns. After the lockout, Plaintiff felt lost and very bad because he no longer

had a source of income, he was out of money, and he had a family to support.

The Third Circuit has ruled that a debtor may recover emotional

distress suffered as a result of a defendant's violation of the automatic stay as an

element of actual damages under Section 362(k)(1). Lansaw, 853 F.3d at 668. The

Third Circuit refused to adopt a bright line rule requiring the introduction of

corroborating medical evidence to prove emotional harm and causation.[15] Instead,

courts are advised to address emotional distress on a case by case basis. The court

noted that "at least where a stay violation is patently egregious, a claimant's

credible testimony alone can be sufficient to support an award of emotional-

---

[15]    The Third Circuit also did not decide whether financial injury is a necessary predicate to recovery
of emotional distress damages. Like Plaintiff in this case, the debtor in Lansaw had established financial
injury as a result of the stay violation, so damages for emotional distress are therefore appropriate in this
case. Lansaw, 853 F.3d at 668.

distress damages." Id. at 669. The court further stated "[w]e are confident that

courts . . . can ensure that plaintiffs recover only for actual injury even in the

absence of expert medical testimony . . .." Id. quoting Bolden v. Se. Pa. Transp.

Auth., 21 F.3d 29, 36 (3d Cir. 1994).

        I find and conclude that Plaintiff has credibly and sufficiently

established that he suffered some emotional distress at the time of the patently

egregious lockout. My findings of financial damage renders corroborating medical

evidence unnecessary. What I find lacking in Plaintiff's submission, however, is

proof that all of the alleged emotional distress he was suffering was caused by

Defendant's violation of the automatic stay. Instead, many of the stresses about

which Plaintiff testified resulted from his overall life and financial difficulties: The

poor health that he and his wife experienced prior to the lockout; raising four

grandchildren on a limited income; and financial problems in his restaurant

business prior to the lockout. The latter clearly led to the financial difficulties,

including a default on his mortgage, which caused Plaintiff eventually to file his

bankruptcy petition. Plaintiff established that he experienced emotional distress

that was directly caused by Defendant's stay violation (1) when he lost the

opportunity to sell the restaurant equipment at a time he desperately needed money

to pay his mortgage and other living expenses and (2) when he lost all of his

financial records, which forced him to spend substantial time recreating those

records. To compensate Plaintiff for this more limited emotional distress, I award

him $2,000 as actual damages.

Finally, Plaintiff requests attorneys' fees as part of his actual damages.

Plaintiff's counsel did not precisely quantify the amount of attorneys' fees that

might qualify as damages incurred by Plaintiff, other than to state that she is

requesting a "reasonable attorneys' fee." Plaintiff's counsel states in her first brief,

however, that she is not charging Plaintiff any amount for the time she spent on

this adversary proceeding. She states in her brief that she should be compensated in

the same amount that Defendant testified he had expended for his counsel to

defend against this adversary proceeding.[16] Defendant had testified that his legal

fees in this adversary proceeding were approximately $7,000.

"The language of Section 362(k)(1) provides for the

compensation of 'actual damages.' Attorneys' fees are included in 'actual

damages' and are not addressed as a separate category of damages." Dean v.

Carr (In re Dean), 490 B.R. 662, 670 (Bankr. M.D. Pa. 2013) quoting In re

Thompson, 426 B.R. 759, 768 (Bankr. N.D. Ill. 2010). To recover attorneys'

fees as an element of actual damages under Section 362(k)(1), many courts

---

[16]    Plaintiff's first brief at p. 8.

require that Plaintiff actually incur an obligation to pay attorneys' fees to counsel as a result of Defendant's stay violation.

Plaintiff's counsel approached her client's pauperism with nobility and did not charge her impecunious client additional thousands of dollars. I will not follow the courts who require that counsel actually bill their clients without regard to their poverty. Our noble profession should look with approval at actions such as counsel's in this case. To the contrary, I follow the sound reasoning of the court in In re Parks, No. 07-18341, 2008 WL 2003163, at **7 - 8 (Bankr. N.D. Ohio, May 6, 2008). The Parks court explained:

> Nor does counsel's agreement to represent the debtor pro bono mean that counsel cannot be awarded attorney's fees under fee-shifting statutes such as 11 U.S.C. § 362(k)(1). See Blanchaard v. Bergeron, 489 U.S. 87, 94, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (pro bono representation does not bar the award of a reasonable attorneys' fees); Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) (attorneys' fees may not be reduced because the attorney conducted the litigation pro bono).

Id, 2008 WL 18341, supra, at *7.

17

Plaintiff's request for an award of attorneys' fees as a component of his actual damages claim is therefore cautiously[17] granted. But determining an amount presents a problem. Plaintiff's counsel failed to establish with clarity the amount of fees she is requesting or the amount of time she spent on this case. Her off-hand remark that her fees are probably on a par with Defendant's counsel fees of $7,000 misses the mark. I will, however, recognize from my experience and counsel's ball park number of $7,000 that a fee award in the amount of $3,500 is certainly reasonable. I shall therefore award Plaintiff $3,500 in attorneys' fees as part of his actual damage claim.

## D. **Plaintiff is entitled to an award of punitive damages in the amount of $5,000.**

Section 362(k)(1) authorizes me to award punitive damages to a debtor to redress a stay violation in "appropriate circumstances." Lightfoot v. Borkon (In re Lightfoot), 399 B.R. 141, 150 (Bankr. E.D. Pa. 2008). The

---

[17]    Counsel has put her client's best interests ahead of her own. I recognize that the majority standard could lead to counsel preparing an invoice for fees and giving it to the client. Then, with a wink and a nod, counsel might assure the client that it was not to be paid. The invoice could then be proffered to a court as the basis for a request for attorneys' fees. I do not want to contribute to the establishment of incentives for counsel to do just that. I can only hope that the integrity of the profession (if not the risk of severe sanctions) would guide counsel along the appropriate path.
    I am also aware that my colleague in the Middle District of Pennsylvania, Honorable Bankruptcy Judge Mary France, considered and then rejected the Parks decision in her Dean v. Parr, supra, decision. This weighed heavily on me because of the high respect I have for Judge France. I must, however, decline to follow her approach in favor of the more appropriate reasoning adopted by the court in Parks.

following factors govern any decision to impose punitive damages for a stay

violation: "(1) the nature of the [Defendant's] conduct; (2) the [Defendant's]

ability to pay; (3) the [Defendant's] motives; and (4) any provocation by the

debtor." Id. Punitive damages are a response to particularly egregious

conduct and are, according to the Third Circuit, "reserved for cases in which

the defendant's conduct amounts to something more than a bare violation

justifying compensatory damages or injunctive relief." Cochetti v. Desmond,

572 F.2d 102, 106 (3d Cir. 1978).

> A court considering the imposition of punitive damages must be
> mindful of their purpose. "Punitive damages are damages, other
> than compensatory or nominal damages, awarded against a
> person to punish him for his outrageous conduct and to deter
> him and others like him from similar conduct in the future."

Frankel v Strayer (In re Frankel), 391 B.R. 266, 275 (Bankr. M.D. Pa. 2008)

quoting Restatement (Second) of Torts § 908 (1979).

The record in this case reflects no evidence regarding factor (2)

(Defendant's ability to pay). Similarly, no evidence supports factor (4)

(provocation by Plaintiff).

Factor (3) (Defendant's motive), however, is clear on its face –

Defendant purposely prevented Plaintiff from getting into the Premises to claim his

property (including financial records). Plaintiff's behavior was quite deliberate in

withholding Plaintiff's property from him and immediately leasing the Premises to

a third party. Defendant's further purposeful refusal to respond to the

communication from Plaintiff's counsel adds to Defendant's egregious behavior.

Factor (1) is the nature of Defendant's conduct. I have seen a few

purposeful stay violations, but I have seen fewer that are as bold and absolute as

Defendant's behavior. The testimony established that Plaintiff had advised

Defendant that he intended to surrender the Premises on January 31, 2015.

Defendant travelled from New York to Lancaster specifically to seize possession

of the Premises immediately, before January 31. When Defendant arrived, the

restaurant was not operating. Defendant called a locksmith to gain entry to the

restaurant and to change the locks. Four days was all that may have kept Defendant

from lawfully moving into the Premises.

Defendant and his counsel also ignored the January 29, 2015 letter,

advising that the lockout violated the automatic stay, which letter Plaintiff's

counsel had sent immediately to Defendant's counsel. Plaintiff's counsel also

requested that the parties reach some agreement regarding the liquidation of

Plaintiff's personal property. Again, Defendant ignored and never responded to

this letter. No evidence showed any attempt by Defendant to contact either Plaintiff

or his counsel. Plaintiff went to the restaurant and knocked, wanting to enter to see

Defendant and claim (or at least catalogue) his property. Defendant vaguely

testified that either he or his attorney reached out to Plaintiff to return Plaintiff's

personal property. I reject this testimony.[18] When asked why he never gave

Plaintiff's personal property back to Plaintiff, Defendant testified that Plaintiff

never set up a time to visit the Premises to remove his personal property. I reject

this testimony.[19]

Defendant blatantly violated the automatic stay both when he enlisted

the self-help measure of changing the locks to the Premises and when he failed to

respond to Plaintiff's request for access to his personal property. Lansaw, 853 F.3d

at 664, n.4. I find and conclude that Defendant's conduct is so patently and

excessively egregious that it requires imposition of punitive damages to punish

Defendant and thwart future violations of the stay. Punitive damages in the amount

of $5,000 fulfill the four factors set forth by the court in Lightfoot, supra, 399 B.R.

at 150, which I follow: (1.) The nature of Defendant's conduct was terribly willful,

deliberate, and knowing; (2.) Defendant offered nothing to support any argument

that he could not afford $5,000; (3.) Defendant's motives were clearly designed to

thwart Plaintiff's efforts to rescue his personal property; and (4.) Plaintiff did

---

[18]   Defendant's testimony in this respect was shifty and was not credible.
[19]   Defendant's testimony in this respect was also shifty and was also not credible.

nothing to provoke Defendant's conduct. I will award punitive damages in favor of

Plaintiff and against Defendant in the amount of $5,000.

# IV. <u>CONCLUSION</u>

For the reasons set forth above, I find and conclude that Defendant

violated the automatic stay of Section 362(a)(3) of the Bankruptcy Code, 11 U.S.C.

§362(a)(3), when he locked Plaintiff out of the Premises and when he failed to

respond to Plaintiff's requests for access to the Premises to retrieve or, at least, to

inventory his personal property and financial records. Plaintiff sustained actual

damages as a result of Defendant's stay violation in the amount of $7,250 for the

loss of property, $2,000 for emotional distress, and $3,500 for attorneys' fees.

Finally, I conclude that imposition of punitive damages in the amount of $5,000 is

appropriate. I will therefore enter an Order entering judgment on the Complaint in

favor of Plaintiff and against Defendant in the aggregate amount of $17,750.

An appropriate Order, based on this Memorandum Opinion,

follows.

BY THE COURT

Date: November 7, 2018

RICHARD E. FEHLING
United States Bankruptcy Judge